**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------------x
SETTLEMENT FUNDING, LLC,

        Plaintiff,

    v.

AXA EQUITABLE LIFE INSURANCE COMPANY,

        Defendant, Counterclaim-Plaintiff and
        Third-Party Plaintiff

    v.

SETTLEMENT FUNDING, LLC,

    -and-

LIFE SETTLEMENT CORPORATION,

        Counterclaim-Defendants

    v.

ALAN RUBENSTEIN, individually,

    -and-

ALAN RUBENSTEIN, as Trustee of the
Esther Adler Family Trust 20070221,

        Third-Party Defendants
-----------------------------------------------------------------------x

NO. 09-CV-8685-HB

**DEFENDANT AND COUNTERCLAIM-PLAINTIFF AXA EQUITABLE LIFE
INSURANCE COMPANY'S RESPONSE TO MOTION *IN LIMINE* TO
<u>EXCLUDE EVIDENCE OF CRIMINAL CONVICTIONS</u>**

I.     **Introduction**

Settlement Funding, LLC ("SF") and Life Settlement Corporation ("LSC") argue that because they allegedly were not involved with the initial fraudulent scheme by which a $5 million life insurance policy (the "Policy") in this case was procured, certain evidence concerning that scheme cannot be admitted at trial.  In their motion, SF and LSC seek to preclude AXA Equitable Life Insurance Company ("AXA Equitable") from offering evidence that Chaim Citronenbaum, the named beneficiary of the purported trust that was the original owner of the Policy, is currently serving a prison sentence in Connecticut for bank fraud.

This fraud involved opening bank accounts in the names of various family members by using their social security numbers and forging their signatures.  *See* Ex. "A;" Ex. "B."[1] According to the deposition testimony and document production in this case by Esther Adler's long-time accountant, Citronenbaum established various bank accounts in Mrs. Adler's name without her consent and knowledge.  *See* Ex. "C" at p. 26, 22-25; p. 27, 1-18, Ex. "D."  Evidence of Citronenbaum's criminal conviction is clearly admissible to prove, *inter alia*, that the trust and the Policy are invalid, and to rebut the claims and defenses raised by SF and LSC in this litigation.

In a related motion *in limine*, SF and LSC seek to preclude AXA Equitable from offering evidence that two other life insurance policies were also fraudulently procured on Esther Adler, including a policy issued by John Hancock Life Insurance Company to a trust under which. Citronenbaum was the named trustee, and through an application signed by Citronenbaum which included very similar misrepresentations to those made to AXA Equitable in order to procure the

---

[1] AXA Equitable's exhibits are found as exhibits to the Affidavit of Gregory J. Star in support of this response, which is being filed separately with the Court on this day.

Policy. Similarly, SF and LSC, in another motion *in limine*, seek to preclude AXA Equitable from revealing to the jury that Citronenbaum refused at his deposition to answer questions about his involvement in establishing the purported trust and procuring the Policy. AXA Equitable incorporates herein by reference its responses to those motions *in limine*.

**II.   ARGUMENT**

    **A.   Evidence Of Citronenbaum's Convictions Is Relevant And Admissible as Evidence of Intent to Defraud and of Participation in a Plan to Defraud**

Citronenbaum is identified as having been the beneficiary of the purported trust, which owned the Policy until it was acquired in 2009 by LSC. *See* Ex. "E." The primary issue in this litigation is whether the purported trust is invalid because the signature of the creator of the trust, Mrs. Adler, was forged. The undisputed evidence which has been put before the Court on numerous occasions and will not be rehashed herein, proves that Mrs. Adler did not sign the trust agreement. SF and LSC have conceded as much, but claim that some unidentified person could have signed the trust agreement with Mrs. Adler's authorization.

According to the deposition testimony of Mrs. Adler's long-time accountant, Citronenbaum falsified bank records and opened various bank accounts in Mrs. Adler's name without her authorization. Citronenbaum's past history of forging Mrs. Adler's signature and his conviction for having participated in a scheme to forge signatures of others in connection with a plan to defraud is relevant and admissible evidence.

Rule 404(b) of the Federal Rules of Evidence permits the admission of evidence of past acts to prove, *inter alia*, intention or a plan to commit similar acts and knowledge that such acts were illegal. Rule 406 of the Federal Rules of Evidence provides that evidence of the habit of a person is relevant to prove that the conduct of that person on a particular occasion was in conformity with the habit or routine practice. Courts in multiple federal jurisdictions have found

2

that evidence of an individual's prior forgeries are admissible evidence when offered to show that the forgery in the instant case was not made innocently or with the mistaken belief that such forgery was authorized. *See, e.g., U.S. v. Faust*, 850 F.2d 575, 584-585 (9th Cir. 1988) (finding that evidence that an individual had forged an invoice was evidence of intent to forge a check); *U.S. v. Fitterer*, 710 F.2d 1328, 1332 (8th Cir. 1983) (finding that evidence of prior insurance fraud admissible as evidence that individual had intent to commit mail fraud).

Evidence of Citronenbaum's criminal conviction is thus admissible under Rules 404 and 406 to show that Citronenbaum's motive and intent was to procure the Policy in a STOLI transaction, and that he acted in conformity with his routine practice in falsifying information for the purposes of procuring financial assets for his own gain. His conviction was for fraudulently opening bank accounts for his own gain; his intention here was to procure the Policy for resale to those without an insurable interest and thus for his own financial gain.

Furthermore, as explained in AXA Equitable's response to SF's and LSC's motion *in limine* to preclude evidence of other insurance policies on the life of Mrs. Adler, this evidence is also relevant and admissible to prove that Citronenbaum was part of a larger, common plan through which he and others, including Alan Rubenstein, the trustee to the purported trust that owned the Policy and another policy issued by Principal Life Insurance Company on Mrs. Adler, procured life insurance for the purpose of gambling on the life of Mrs. Adler.

**B.      Evidence Of Citronenbaum's Previous Convictions Is Admissible To Impeach Citronenbaum**

In addition to being relevant and admissible to the claims and defenses in this litigation, evidence of Mr. Citronenbaum's criminal conviction is admissible to impeach Citronenbaum's credibility. AXA Equitable deposed Ctironenbaum, but he refused to answer any questions concerning the Policy or his role in procuring the Policy. Instead, he invoked his Fifth

3

Amendment privilege.  To the extent Citronenbaum chooses to reveal facts at trial concerning his involvement with the Policy, AXA Equitable is entitled to impeach his credibility, pursuant to Rule 609, through evidence that Mr. Citronenbaum was convicted of a crime of dishonesty (fraud) within the last ten years.[2]  This is true whether Citronenbaum is called to testify by AXA Equitable or any other party in this case.  *See* FED. R. EVID. 607 (the party calling the witness may attack credibility).[3]

### C.   The Probative Value of the Evidence Outweighs Any Possible Prejudice

Rule 403 of the Federal Rules of Evidence provides that relevant evidence may be excluded if its probative value is <u>substantially outweighed</u> by the danger of, *inter alia*, unfair prejudice and confusion of the issues.  SF and LSC claim that evidence regarding Citronenbaum's conviction will have a prejudicial effect because it does not show that SF and LSC had any part in any fraud or were connected to Citronenbaum in any way.

While AXA Equitable disputes, and intends to disprove, the idea that LSC and SF are blameless in this transaction, whether SF and LSC were involved in the fraudulent procurement of the Policy is irrelevant to AXA Equitable's claims in this litigation, including the claims that the trust and Policy be declared invalid.  The Policy is void *ab initio* if it was procured by an

---

[2] SF and LSC incorrectly argue that impeachment is only possible if the witness previously testified, and that because Mr. Citronenbaum refused to answer deposition questions, there is no testimony to impeach.  This argument overlooks the fact that Rule 609 expressly permits evidence of certain crimes of dishonesty to impeach the credibility of a witness who testifies at trial.

[3] SF and LSC also incorrectly imply that AXA Equitable should not be permitted to call Mr. Citronenbaum as a witness at trial since he has evidenced an intent not to answer any questions.  It is within the discretion of the Court to refuse to permit a party to call such a witness in criminal cases, with the rationale being that forcing the witness to claim the Fifth Amendment leaves open the possibility that the jury may impermissibly draw an adverse inference from this invocation against the defendant.  *See, e.g., United States v. Johnson*, 488 F.2d 1206, 1211 (1st Cir. 1973).  Of course, there is no such prohibition of the drawing of adverse inferences against a party in a civil case, and such an inference is permitted in certain circumstances even if the witness himself is not a party to the case.  *See, e.g., LiButti v. U.S.*, 107 F.3d 110, 121 (2d. Cir. 1997).  The question of whether AXA Equitable is entitled to such an adverse inference is the subject of another pending motion *in limine*.

4

invalid trust and/or if it was procured with a lack of insurable interest, regardless of whether the current owner was involved at the Policy's inception. There is no potential for prejudice towards SF and LSC because the jury may return a verdict on AXA Equitable's claims regarding the validity of the Policy without considering the involvement of SF and LSC.

Furthermore, SF's and LSC's own claims, that Mrs. Adler may have authorized others to sign her signature on the trust agreement and in multiple places in the application for the Policy, increase even further the probative value of this evidence. Citronenbaum's past conviction for fraud – a crime of dishonesty – is strong evidence that Citronenbaum (who was the named beneficiary of the trust that owned the Policy) participated in a plan to defraud AXA Equitable and rebuts any claim by SF and LSC that Citronenbaum was authorized to execute documents on Mrs. Adler's behalf. The probative value of this evidence therefore greatly outweighs any potential for prejudice that might exist.

### III.   CONCLUSION

For the reasons set forth herein, AXA Equitable respectfully requests that the Court deny SF's and LSC's motion *in limine* to exclude evidence of the criminal convictions of Chaim Citronenbaum.

          Respectfully submitted,

Dated: September 24, 2010   DRINKER BIDDLE & REATH LLP

          By: /s/ Gregory J. Star
          Stephen C. Baker (*pro hac vice*)
          Stephen A. Serfass (*pro hac vice*)
          Gregory J. Star (*pro hac vice*)
          Drinker Biddle & Reath LLP
          One Logan Square, Ste. 2000
          Philadelphia, PA 19103
          (215) 988-2700 (phone)
          (215) 988-2757 (facsimile)
          Stephen.Baker@dbr.com
          Stephen.Serfass@dbr.com
          Gregory.Star@dbr.com

## **CERTIFICATE OF SERVICE**

This is to certify that I have on this date served, on the counsel of record listed below, a copy of the foregoing Response to Motion *in Limine* to Exclude Evidence of Criminal Convictions, by filing the same through the Court's ECF/CM system:

> Philip H. Cohen
> Greenberg Traurig, LLP
> 200 Park Avenue
> New York, New York 10166
>
> Jesus E. Cuza
> Ina M. Berlingeri
> Greenberg Traurig, LLP
> 401 East Las Olas Boulevard
> 20th Floor
> Fort Lauderdale, FL 33301

*Attorneys for Plaintiff and Counterclaim-Defendant Settlement Funding, LLC
and Counterclaim-Defendant Life Settlement Corporation*

> Ira S. Lipsius, Esquire
> Schindel, Farman, Lipsius, Gardner & Rabinovich LLP
> 14 Penn Plaza, Suite 500
> New York, NY 10122

*Attorney for Third-Party Defendant Alan Rubenstein, individually
and as trustee of the Esther Adler Family Trust 20070221*

Dated: September 24, 2010                 /s/ Gregory J. Star
                                          Gregory J. Star