**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **SETTLEMENT FUNDING, LLC**<br><br>**Plaintiff - Counterclaim Defendant,**<br><br>**- against -**<br><br>**AXA EQUITABLE LIFE INSURANCE CO.**<br><br>**Defendant - Counterclaim Plaintiff – Third-Party Plaintiff,**<br><br>**- against -**<br><br>**LIFE SETTLEMENT CORPORATION**<br><br>**Counterclaim Defendant,**<br><br>**- and -**<br><br>**ALAN RUBENSTEIN, as Trustee of the Esther Adler Family Trust 20070221**<br><br>**Third-Party Defendant.** | **09 CV 8685 (HB)**<br><br>**OPINION & ORDER** |

**Hon. Harold Baer, Jr., District Judge:**

This case centers around a $5 million insurance policy (the "Policy") issued by AXA Equitable Life Insurance Co. ("AXA") on the life of non-party Esther Adler. Familiarity with the background can be gained by reference to this Court's Opinion and Order dated September 30, 2010, 2010 WL 3825735. In brief, plaintiff Settlement Funding ("SF") came to acquire the rights to the Policy benefits, which had originally been payable to the Esther Adler Family Trust 20070221 (the "Trust"). Third-party Defendant Alan Rubenstein was the Trustee of the Trust and was one of the people who facilitated the Trust's procurement of the Policy.

Since Mrs. Adler's death on June 6, 2009, the parties have been at loggerheads. The primary concern understandably is the validity of the Policy. Other bones of contention include a dispute as to whether the Policy was procured through fraud, whether the original beneficiary of the Policy had an insurable interest in Mrs. Adler's life – a requirement under New York law – and finally whether any of this matters in light of the Policy's incontestability clause.

A jury trial was held from October 18 – 25, 2010. The jury found, among other things, that the incontestability clause barred AXA from challenging the Policy's validity. The jury also found for SF on its claim of negligent misrepresentation against AXA. The jury found for Rubenstein on AXA's claim of fraud, and against Rubenstein on AXA's claim of conspiracy to commit fraud. On November 15, 2010, the Court entered judgment for SF against AXA in the amount of $5 million and awarded nominal damages for AXA and against Rubenstein in the amount of $1. AXA and Rubenstein each move separately for judgment as a matter of law and SF moves to correct or amend the judgment. All motions were timely filed. For the reasons that follow, AXA's motion is DENIED, Rubenstein's motion is DENIED, and SF's motion is GRANTED to the extent described below.

## I. The motions for judgment as a matter of law

### A. Rule 52 is inapplicable

In an action "with an advisory jury" the trial judge must "find the facts specially and state its conclusions of law separately." Fed. R. Civ. P. 52(a). AXA's motion for judgment under Rule 52(a) urges the court to disregard the jury's findings and make independent findings of fact and conclusions of law. However, Rule 52(a) does not govern the case, because AXA has failed to show that the jury's verdict was merely "advisory" and, even if the jury was eligible at one time to act in a merely advisory capacity, that time has passed. SF had a right to a jury trial that cannot be retroactively taken away. Even assuming that some of the claims in this lawsuit were equitable and subject to a bench trial, that does not change the result because independent legal claims were alleged and AXA neither sought a bench trial on the equitable claims nor objected to a jury trial.

#### *1. SF had a right to a jury trial*

The Seventh Amendment guarantees the right to a jury where "*legal* rights [are] to be ascertained and determined, in contradistinction to those where equitable rights alone [are] recognized, and equitable remedies [are] administered." *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 41 (1989). "Where equitable and legal claims are joined in the same action, there is a right to jury trial on the legal claims which must not be infringed either by trying the legal issues as incidental to the equitable ones or by a court trial of a common issue existing between the claims." *Starr Int'l Co. v. Am. Int'l Group, Inc.*, 623 F. Supp. 2d 497, 500 (S.D.N.Y. 2009) (quoting *Ross v. Bernhard*, 396 U.S. 531, 537-38 (1970)). The Court must first determine whether any of SF's claims entitle it to a jury trial. *Id.*

The primary claim in this case was a legal one and entitled SF to a jury trial. SF's first cause of action was for recovery of insurance proceeds and the fact is that the award of insurance proceeds was what this action was all about. The parties have argued previously about the provenance of the "recovery of insurance proceeds" cause of action. I conclude that it essentially sounds in contract because "[c]laims under insurance policies are, broadly speaking, contract claims as to which there has been a right to jury trial since 1777." *Country-Wide Ins. Co. v. Harnett*, 426 F. Supp. 1030, 1034 (S.D.N.Y. 1977). *See also Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 210 (2002) ("[A] claim for money due and owing under a contract is 'quintessentially an action at law.'"); *Kishter v. Principal Life Ins. Co.*, 186 F. Supp. 2d 438, 444-45 (S.D.N.Y. 2002) ("[I]it is hard to see how a forced payment of life insurance proceeds could be a remedy that was "typically available in equity"). SF's claim sought the monetary award of insurance proceeds and not more. Such a claim entitled SF to a jury. *See Murphy v. Am. Home Prods. Corp.*, 136 A.D.2d 229, 232 (1st Dept. 1988) ("If, in fact, a sum of money alone can provide full relief to the plaintiff under the facts alleged, then there is a right to a jury trial.").

AXA's counterclaims for declaratory judgment do not change this result. Declaratory judgment actions have no inherently legal or equitable nature, but take on the character of the underlying dispute. *See, e.g., Starr Int'l*, 623 F. Supp. 2d at 502. Thus, "to determine whether there is a right to jury trial in a declaratory judgment action, first it is necessary to determine in what kind of an action the issue would have come to the court if there were no declaratory judgment procedure." *Starr Int'l*, 623 F. Supp. 2d at 503. Here, without a declaratory judgment procedure, AXA's claims would appear as defenses to an action by SF to enforce a contract, because the payout of Policy benefits under the parties' agreement was the heart of this dispute. SF may not be deprived of the right to a jury trial by the mere fact that AXA chose to assert its arguments in the form of counterclaims for declaratory judgment. *See Beacon Theatres, Inc. v. Westover*, 359 U.S. 500, 504 (1959).

Nor is this result changed by the fact that SF asserted an affirmative defense of equitable estoppel to AXA's counterclaims. It is true that estoppel is "an equitable defense." *ProFitness Physical Therapy Ctr. v. Pro-Fit Orthopedic & Sports Physical Therapy P.C.*, 314 F.3d 62, 66 (2d Cir. 2002). However, to reverse a jury finding that AXA was estopped from challenging the validity of the Policy would be an exercise in futility: the jury's independent finding that AXA was barred by the incontestability provision would still preclude AXA from prevailing.

***2. AXA consented to a jury trial***

Even where no legal claims are made, a jury's verdict may be binding if the parties have consented to it and the failure to object to a request for jury trial is the equivalent of consent. *See Broadnax v. City of New Haven*, 415 F.3d 265, 272 (2d Cir. 2005). AXA claims that its motion for judgment as a matter of law during trial amounted to an objection to a trial by jury. However, this is comparing apples and oranges; the position that AXA should prevail as a matter of law is hardly equivalent to an objection to a jury hearing equitable claims. AXA's position would be understandable had it objected to a binding jury prior to trial. It did not. Its failure to do so indicates consent and its post-facto objections appear as no more than a desire to have a second bite of the apple, following an unfavorable verdict.

The cases cited by AXA in support of its request are inapposite. It is true that the Second Circuit has accepted a district court's decision to deem a jury advisory after the start of trial. *See Merex A.G. v. Fairchild Weston Sys., Inc.*, 29 F.3d 821, 827 (2d Cir. 1994). However, the court in that case found it "most significant[]" that the decision to treat the jury as advisory had been made before the jury returned a verdict. *Id.* at 827. This cured any risk that the decision amounted to a judge's "veto" of the jury. *Id.* Additionally, while the failure to give notice to the parties was insufficient, without a showing of prejudice, to reverse the district court, the *Merex* decision cast doubt on the practice. *See id.* Here, AXA's request to treat the jury as advisory comes after the verdict, would provide no notice, and would prejudice the other parties.

The *Starr* decision resolved a proper motion brought *prior to trial*, pursuant to Fed. R. Civ. P. 39(c), and both parties in that case agreed that the relevant claims were "entirely equitable and must ultimately be decided by the Court." *See Starr Int'l*, 623 F. Supp. 2d at 500, 504. In *DeFelice* the Second Circuit concluded that a jury's verdict should have been advisory, but in that case the plaintiff had made a motion for trial by jury and the trial judge granted the motion over the defendant's objection—all prior to trial. *DeFelice v. Am. Int'l Life Assur. Co.*, 112 F.3d 61, 64-65 (2d Cir. 1997). Additionally, the complaint involved only one claim and it was equitable. *Id.* For obvious reasons, neither of those cases controls here and I conclude that Rule 52 is inapplicable.

**B. The Rule 50 motions do not merit judgment as a matter of law**

Under Rule 50, a court may render judgment as a matter of law when "a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to

find for that party on that issue." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 149-51 (2000); Fed. R. Civ. P. 50. "[I]n entertaining a motion for judgment as a matter of law, the court should review all of the evidence in the record . . . . In doing so, however, the court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Id.* This holds "even though contrary inferences might reasonably be drawn." *Kaytor v. Elec. Boat Corp.*, 609 F.3d 537, 545-46 (2d Cir. 2010) (internal citations omitted). The motion should be granted only where "(1) there is such a complete absence of evidence supporting the verdict that the jury's findings could only have been the result of sheer surmise and conjecture, or (2) there is such an overwhelming amount of evidence in favor of the movant that reasonable and fair minded [persons] could not arrive at a verdict against [it]." *Advance Pharm., Inc. v. United States*, 391 F.3d 377, 390 (2d Cir. 2004).

***1. AXA's motion***

AXA asserts that the jury's verdict should be set aside because no evidence supports it. As SF points out, however, it did present evidence of its right to the insurance proceeds. AXA's evidence, which added little to what it submitted at the summary judgment stage, failed to convince the jury that it should set aside the incontestability provision and find in favor of AXA. AXA's invitation to disregard the jury's findings on this issue is unavailing because it falls well short of the high bar imposed by Rule 50.

AXA presented evidence favorable to its position that was unavailable on summary judgment and the jury found it insufficient to overcome the incontestability clause. This included the stipulation between the parties that Mrs. Adler never signed the Trust that housed the policy at issue, Tr. 595:15-16, testimony by Avi Kestenbaum, the purported notary of the Trust, that he did not notarize the trust and never met Mrs. Adler, Tr. 375:17-22, and testimony that both Mrs. Adler's and Mr. Kestenbaum's signatures had been forged, Tr. 451:1-3. Wait – there was more: AXA presented evidence in support of its position, *e.g.* that there was no insurable interest at inception and the Policy was simply part of a large and well-organized stranger-originated life insurance scheme. *See* Tr. 442:8-12, 463:20-464:7, 464:11-465:15.

Nonetheless, the jury found these facts unavailing and its verdict in favor of SF is supported by other evidence. In particular, SF presented evidence that the beneficiary of the trust, Chaim Citronenbaum, and thus ultimately the beneficiary of the Policy, had an insurable interest in Mrs. Adler's life because he was her son-in-law. Tr. 449:8-13, 479:25-480:3. The verdict was

also supported by evidence that Mrs. Adler participated in the procurement of the Policy by answering questions and submitting to a medical exam in connection with AXA's issuance of the Policy and signed at least some portion of the Policy. Plaintiff's Ex. 9 at 1140, Ex. 1 at UP-003; Tr. 267:14-20, 269:14-25. Further, there was evidence supporting the position that Mrs. Adler knew about the trust in connection with the Policy, Tr. 380:13-17, 385:14-17, and that she participated in an interview with an inspector hired by AXA to complete a report for its underwriting review. Plaintiff's Ex. 2 at AXA 2232, 2236, Tr. 518:5-519:1.

The jury also heard evidence that SF relied on the statements made by AXA in the Policy, including that the Policy was subject to a contestability provision and that the contestability period had expired. Tr. 154:19-156:13. In addition, there was evidence that SF relied on certain representations made by AXA in a document prepared by AXA and sent to SF on February 3, 2009, including that the Trust was the owner and the Policy was enforceable and beyond contestability. Tr. 160:20-165:17. All of this evidence supports the jury's finding that the Policy – and the incontestability clause – was valid and enforceable and that SF had committed no wrong in connection with the purchase, sale, repurchase or assignment of the Policy. While it is beyond peradventure that the evidence taken as a whole raised an eyebrow or two, the problem is for the legislature and not the courts to solve.

AXA's warmed-over claims concerning the underlying problems with the contract, while sympathetic, ultimately fail. For one thing, it stipulated that the Policy was in force and cannot argue that if the Policy was *void ab initio*, no incontestability provision exists to bar its challenge, D.E. 58 at 8. Additionally, the Court of Appeals has recently upheld the validity of a life insurance policy even where the policy was taken out for the express purpose of resale to a stranger. *See Kramer v. Phoenix Life Ins. Co.*, 15 N.Y.3d 539, 553 (2010). That case signals that the jury was well within its rights to find that the circumstances surrounding the procurement of the Policy at issue in this case were insufficient to warrant setting aside the incontestability provision.

In short, after a review of the record, I conclude that AXA has failed to show that the trial was so devoid of evidence supporting the jury's verdict as to warrant the entry of judgment as a matter of law under the strict standard imposed by Rule 50(b). *See Advance Pharm.*, 391 F.3d at 390. Put another way, despite problems in the procurement of this Policy, I am constrained by New York law and the high bar of Rule 50 to recognize that the jury's verdict was not wholly

unsupported and, drawing all inferences in favor of the non-moving party, I decline to overrule the jury's findings regarding the Policy.

AXA's other arguments are unavailing. The argument concerning SF's award for negligent misrepresentation is moot because SF has represented that it is not pursuing any remedies under the negligent misrepresentation claim. Pl. Opp. Mem. at 21.

AXA also argues that the jury's award of nominal damages against Rubenstein on AXA's claim of conspiracy to commit fraud was incorrect as a matter of law. This argument occupies less than a page and offers no supporting citations. The jury was not incorrect to award merely nominal damages here because it found that AXA had not reasonably relied upon Rubenstein's misrepresentations. Rubenstein's misrepresentations were central to the fraudulent scheme and, while the jury found that he had conspired to accomplish that scheme, it found no reasonable reliance on his misrepresentations. As a result, the jury was not incorrect as a matter of law when it concluded that no compensable injury resulted from the misrepresentations. *See Indus. Tech. Ventures LP v. Pleasant T. Rowland Revocable Trust*, 688 F. Supp. 2d 229, 247 (W.D.N.Y. 2010) (to recover from conspiracy to commit fraud, harm must result from the underlying fraudulent acts).

***2. Rubenstein's motion***

Rubenstein argues that the jury was incorrect to find that he had conspired to commit fraud. AXA points to evidence –much of it Rubenstein's own testimony – from which reasonable people could conclude that Rubenstein was complicit in an improper STOLI scheme that employed forgery and other deceptive practices to procure the Policy. *See* Tr. 464:5-7 (Rubenstein agrees that Cambridge used him and the Trust to hide its initial payment of the premium to AXA); Tr. 464:11-22; 465:11-15 (Rubenstein admits knowing that he was instructed by people at Cambridge to make up certain documents concerning a loan for the premium payment, and that a number of people associated with Cambridge contributed funds for the premium yet had no connection with Mrs. Adler or anyone in her family); Tr. 486:6-11, 18-23 (Rubenstein testified it was his belief that Mrs. Adler's signature on the Trust was forged at Cambridge, as was the signature of the notary).

Rubenstein also contends that, because the jury did not find that he had committed direct fraud, he could not have been found to have been part of a conspiracy to commit fraud. While it is true that "[u]nder New York law, a claim for civil conspiracy may stand only if it is connected

to a separate underlying tort . . . plaintiff need not allege and prove that each defendant committed every element of the underlying tort." *Meisel v. Grunberg*, 651 F. Supp. 2d 98, 119 (S.D.N.Y. 2009) (internal citations omitted); *see also Snyder v. Puente De Brooklyn Realty Corp.*, 297 A.D.2d 432, 435 (3d Dept. 2002) ("[P]laintiff need not allege and prove that each defendant committed every element of fraud, [rather,] plaintiff must establish facts which support an inference that defendants knowingly agreed to cooperate in a fraudulent scheme, or shared a perfidious purpose . . . .") (internal citations omitted). As described above, the record overflows with evidence from which a reasonable jury could have found the existence of fraud and that Rubenstein had conspired to commit it. The jury's determination that AXA did not reasonably rely on Rubenstein's misrepresentations, and thus failed to charge him with the substantive fraud claim, was not unreasonable.

Rubenstein's suggestion that the verdict sheet facilitated what he believes to be a discrepancy is unavailing. He was given drafts and took advantage of the opportunity to participate in the final draft of the verdict sheet. Rubenstein's argument that the incontestability clause bars fraud claims is likewise unpersuasive. Incontestability clauses prevent challenges to the validity of a policy. *See* N.Y. Ins. Law § 3202(a)(3). Rubenstein's reliance on *Security Mutual Life Insurance Co. of New York v. Herpaul* is misplaced because that case does not stand for the general proposition that an incontestability clause bars any actions related to the Policy. *See* 36 A.D.3d 449 (1st Dept. 2007). In that case, the common law claim for fraud would have eviscerated the incontestability clause by requiring the beneficiary to return the policy benefits to the insurer. *Id.* at 451. It did not address the question at bar, which involves a fraud claim against a third party. Moreover, the court there relied in part on the fact that the plaintiff had failed to plead the requisite particularity to sustain the claim. *Id.* In this case, unlike in *Herpaul*, the fraud claim against Rubenstein did not affect the rights of the beneficiary and did not function as a back-door means for challenging the Policy.[1]

[1] Rubenstein's reliance on *Kramer v. Phoenix Life Ins. Co.* is also inapposite because that opinion was limited to the question whether New York law "prohibit[s] an insured from procuring a policy on his own life and immediately transferring the policy to a person without an insurable interest in the insured's life, if the insured did not ever intend to provide insurance protection for a person with an insurable interest in the insured's life[.]" 15 N.Y.3d 539, 545 (2010). The case did not address fraud claims against non-beneficiary third parties, and has no bearing on Rubenstein's motion.

**II. SF's motion to correct or amend the judgment**

SF moves pursuant to Rules 60(a) and 59(e) to correct or amend the judgment in order to provide for the payment of interest on the $5 million Policy benefits. A motion under Rule 60(a) is available to correct a judgment "for the purpose of reflecting accurately a decision that the court actually made." *Truskoski v. ESPN, Inc.*, 60 F.3d 74, 77 (2d Cir.1995). The parties agree that some amount of interest is due, but dispute precisely what amount.

On October 25, 2010, the jury rendered its verdict for SF and on November 15, 2010 the Court entered judgment for AXA in the amount of $5 million, with no mention of pre- or post-judgment interest. That award reflects the jury's conclusion that SF is entitled to the Policy benefits and those benefits include payment of interest on the $5 million dollars in accordance with the Policy and applicable law. AXA has represented that the contractual rate under the Policy is 3% and SF does not dispute this.

A rate of 3% is also consistent with applicable law. In a diversity case, prejudgment interest is governed by state law. *Adrian v. Town of Yorktown*, 620 F.3d 104, 107 (2d Cir. 2010). New York Insurance Law § 3214 provides that in "an action to recover the proceeds due under a policy of life insurance . . . , interest thereon shall be paid from the date of the death of the insured . . . to the date the verdict is rendered . . . , computed pursuant to the provisions of subsection (c) hereof, and thereafter in accord with [C.P.L.R. § 5003]." N.Y. Ins. Law § 3214(a). Subsection (c) provides for interest at the rate "currently paid by the insurer on proceeds left under the interest settlement option, from the date of death of an insured . . . to the date of payment." § 3214(c). In the absence of an "interest settlement option," the New York Insurance Department allows an insurer to apply an interest rate approved by the insurer's board of directors for the purposes of calculating the interest payable on Policy's death benefit. *See* New York Insurance Department Office of General Counsel Opinion No. 05-07-03 (July 5, 2005), at 2, *available at* http://www.ins.state.ny.us/ogco2005/rg050703.htm (last visited Feb. 15, 2011).

Under penalty of perjury, AXA has affirmed that the Policy had the functional equivalent of an "interest settlement option," as defined by New York law, and that at all relevant times it provided for an interest rate of 3% per annum. *See* Star Decl. Ex. B at ¶¶ 4-5. Thus, the 3%

interest rate applies from the "date of the death of the insured . . . to the date the verdict is rendered", N.Y. Ins. Law § 3214(a), here, June 6, 2009 to November 15, 2010.[2]

The Court must also address C.P.L.R. § 5003, as required by § 3214(a). Because the judgment in this case awarded an amount of money, post-judgment interest is appropriate. *See* C.P.L.R. § 5003. Post-judgment interest – which is characterized as a procedural issue – is governed by federal statute in a diversity case. *Adrian*, 620 F.3d at 107; *FCS Advisors, Inc. v. Fair Fin. Co. Inc.*, 605 F.3d 144, 147 (2d Cir. 2010). The rate applicable in this case is "calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of the judgment." 28 U.S.C. § 1961(a).

The judgment against AXA includes pre-judgment interest at a rate of 3% per annum, and post-judgment interest at a rate to be calculated in accordance with 28 U.S.C. § 1961(a). To the extent this requires a correction to the Judgment of November 15, 2010, that Judgment is hereby corrected and the Clerk will assess the correct amount and include that amount in the amended judgment.

## CONCLUSION

For the reasons described above, the motions by AXA and Rubenstein for judgment as a matter of law are DENIED. SF's motion to correct or amend the judgment is GRANTED to the limited extent described above.

The Clerk of the Court is instructed to close the relevant motions (Docket Entries 186, 188, 190, 193) and remove them and this case from my docket.

**SO ORDERED**
**March 21, 2011**
**New York, New York**

**Hon. Harold Baer, Jr.**
**U.S.D.J.**

---

[2] I decline to apply the higher prejudgment interest rate available under C.P.L.R. § 5001(a) for breach of contract claims and for claims related to property. That is a general provision, while the rate imposed by New York Insurance Law is specifically applicable to this case. Moreover, § 5001(a) is not appropriate here because the Policy was never breached, *see Ficus Invs., Inc. v. Private Capital Mgt., LLC*, 71 A.D.3d 591, 592 (N.Y.A.D. 1st Dept. 2010), and I decline to conclude that AXA's good faith effort to ascertain the validity of the Policy constitutes "interfering" with SF's rights to the Policy benefits. *See* C.P.L.R. § 5001(a).