UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SETTLEMENT FUNDING , LLC,   ) | Case No.: NO. 09-CV-8685-HB |
| ) | |
| Plaintiff-Counterclaim Defendant,   ) | **SETTLEMENT FUNDING, LLC'S** |
| ) | **AND LIFE SETTLEMENT** |
| - against -   ) | **CORPORATION'S REPLY IN** |
| ) | **SUPPORT OF MOTION FOR** |
| AXA EQUITABLE LIFE INSURANCE CO.,   ) | **REVIEW OF TAXATION OF** |
| ) | **COSTS AS TO GRAPHICS USED** |
| Defendant-Counterclaim Plaintiff.   ) | **AT TRIAL** |
| ) | |
| - and -   ) | |
| ) | |
| LIFE SETTLEMENT CORPORATION,   ) | |
| ) | |
| Counterclaim defendant   ) | |
| _____   ) | |

Plaintiff SETTLEMENT FUNDING, LLC and Counterclaim Defendant LIFE SETTLEMENT CORPORATION (collectively referred to as "SF" or "Plaintiff"), hereby file this reply in support of their Motion for Review of Taxation of Costs as to Graphics Used at Trial (the "Motion") (D.E. 207), and state as follows:

## INTRODUCTION

Pursuant to Rule 54(d)(1) of the Federal Rules of Civil Procedure, Plaintiff has requested that the Court award costs for trial graphics expenses. Such request is made in accordance with this Court's prior holdings that trial graphics expenses are recoverable costs when, as here, the use of the trial graphics was helpful to the jury in focusing on the key documents and concepts presented at trial. In response to the Motion, AXA argues that the request for such costs was untimely and that the amount requested is unreasonable. The request for such costs was timely made pursuant to Rule 54(d)(1), as the costs were originally requested in Plaintiff's Bill of Costs and the Motion was filed seven days after the Taxation of Costs by the Clerk was entered. The requested expenses for trial graphics are supported through the invoices presented and the amounts therein are reasonable.

## ARGUMENT

A.  **Plaintiff's Motion for Trial Graphics Expenses Was Timely**

This Court has already recognized that trial graphics expenses are taxable costs where, as here, the use of technology improves the presentation of information to the jury. *See Farberware Licensing Co. LLC v. Meyer Mktg. Co., Ltd.*, Case No. 09 Civ. 2570 (HB), 2009 WL 5173787, *8 (S.D.N.Y. Dec. 30, 2009) (Baer, J.); *see also DiBella v. Hopkins*, 407 F. Supp. 2d 537, 540 (S.D.N.Y. 2005).

In order to avoid this, AXA makes a tortured construction of Rule 54(d) of the Federal Rules of Civil Procedure ("Rule 54(d)") and Local Civil Rule 54.1(c)(6) to claim that Plaintiff's Motion should have been brought under subsection (2) instead of subsection (1). The analysis is flawed, however. While section (1) of Rule 54(d) provides for "costs — other than attorney's fees," section (2) provides for "attorney's fees and *related* nontaxable expenses." Fed. R. Civ. P. 54(d) (emphasis added). The "related" nontaxable expenses are those in which the attorney (not the party) incurs in connection with the legal services, such as the expense of legal research. *See DiBella*, 407 F. Supp. 2d at 539 ("on-line legal research expenses, cannot be recovered as 'costs'" and may be recovered only as part of an attorneys' fees application where attorneys' fees are allowed by statute or contract").

Here, Plaintiff sought its costs for trial graphics expenses in its Bill of Costs. Because the Judgment Clerk did not award those expenses, Plaintiff sought review of the award within seven (7) days after the Judgment on the costs was entered. This was in accordance with Local Civil Rule 54.1, with section (1) of Rule 54(d) and with previous decisions of this Court. For example, in *DiBella*, the plaintiff sought the expense of the services of a trial consultant in its Bill of Costs -- just like SF did here. The Judgment Clerk awarded costs but did not include the trial consultant expenses. The plaintiff -- also like SF did here -- filed a motion asking the Court to review the award in order to

include those expenses. The Court modified the award of costs, concluding that the plaintiff was *entitled* to the reimbursement of the expenses for the trial consultant. 407 F. Supp. 2d at 540.[1]

In sum, this Court has recognized that trial graphics expenses like the ones being sought by SF here are taxable costs. AXA's attempt to have the court treat such costs as a nontaxable expense related to attorneys' fees is wholly without merit and contrary to this Court's prior decisions.

**B.     Plaintiff's Costs Incurred for Trial Graphics Expenses Were Reasonable**

In awarding costs for trial graphics expenses, this Court stated that "'as long as the cost is reasonable and the devices aid in the efficient and effective presentation of evidence, a prevailing party ***should be*** allowed to recover their expense.'" *Farberware*, 2009 WL 5173787, *8 (quoting *DiBella*, 407 F. Supp. 2d at 540) (emphasis added). Here, AXA does not and cannot argue that Plaintiff's use of Trial Graphix did not aid in the efficient and effective presentation of evidence. Indeed, AXA concedes that the use of trial graphics was a necessary function in the case as "both parties utilized computer graphics and video depositions in presenting evidence to the jury." D.E. 209 at 6. AXA simply argues that Plaintiff should have had its counsel handle the function directly rather than utilize the services of outside technical experts. Such argument is disingenuous, to the extent that AXA's attorneys did not handle its technology and evidence presentation either.[2]

Moreover, contrary to what AXA claims, the Trial Graphix consultants did not just "oversee[] a slide show." In fact, the consultants were able to offer expertise otherwise unavailable to Plaintiff and its counsel. For example, Trial Graphix consultant Humberto Ferrer was able to narrow video deposition testimony on short notice to eliminate certain testimony in accordance with the Court's

---

[1] AXA's analysis suggests that Local Civil Rule 54.1, which provides that "[c]osts of maps, charts, and models, including computer generated models, are not taxable except by order of court" requires a party to seek an order under section (2) of Rule 54(d). However, in deciding a motion like the one filed by SF under section (1) of Rule 54(d), the Court in *DiBella* reasoned that the cited rule granted the Court the authority to allow those costs.

[2] AXA claims to have used undefined "internal resources" to present its evidence. As explained below, its internal resources had difficulties resolving technical problems experienced during AXA's presentation, which puts into question their technical capacity. In any event, AXA is not in the position to argue (much less show) that Plaintiff's counsel in fact had "internal resources" with the capacity or capability to do what Trial Graphix did here.

directives shortly prior to trial. Mr. Ferrer was able to present exhibits simultaneously with such video testimony to allow the jury to put testimony into context.[3] Having had significant technical and trial experience, Mr. Ferrer was able to effectively present exhibits as they were being referenced -- which saved time and resources of the Court, the parties and the jury.[4] Where AXA identified thousands of pages of documents as exhibits, the use of trial graphics consultants was necessary and proper to effectively prepare and present evidence as issues arose at trial. *See Farberware*, 2009 WL 5173787, *8 (party entitled to recover reasonable costs where "documentary exhibits were voluminous and the various visual aids that were presented at trial were helpful to the jury and the Court in focusing attention on the salient documents and concepts").

In addition to that, Trial Graphix created visual aids, used during opening and closing arguments, that made it easy for the jury to follow the timeline in this case, especially considering that there were a number of events at issue over several years. *DiBella*, 407 F. Supp. 2d at 540 (a prevailing party is entitled to recover non-attorney expenses incurred in the "design and production of demonstrative presentations for trial, scanning of exhibits, computer operation, creation of exhibit database, digitizing of audio and visual recordings, and set-up and break-down of technology used during trial").

Furthermore, the only specific amount challenged by AXA is $5,800.71 in travel expenses to have Mr. Ferrer present at trial. D.E. 209 at 5. Mr. Ferrer travels around the country on behalf of his clients that are going to trial. In this case, Mr. Ferrer traveled from New Jersey (where he had just finished a trial) to Florida to meet with witnesses and understand the exhibits at issue. He then traveled to New York for the trial. By taking the time to travel and meet with witnesses and counsel,

---

[3] This is something that SF's counsel could not have been able to do. In fact, it was something AXA's "internal resources" were unable to do even though AXA's counsel is also among the larger firms in the country.

[4] Notably, there were several delays during trial caused by AXA's inability to present certain trial graphics at trial in a timely manner. *See, e.g.*, Trial Tr. at 510 (taking a recess break where AXA struggled to get referenced document on the screen in the courtroom). There were no such delays during Plaintiff's presentation of the evidence due to the expertise and experience offered by Trial Graphix.

Mr. Ferrer presented exhibits at trial quickly and easily. During trial, Mr. Ferrer also stayed at the same hotel as counsel for Plaintiff where he could work with witnesses and counsel to make the presentation at trial most efficient. These behind-the-scenes efforts saved time for the Court and jury during the trial and made the presentation of evidence virtually seamless. Consequently, these costs were reasonably incurred by Plaintiff, and are taxable to AXA where Plaintiff is the prevailing party.

Finally, AXA suggests that the total amount of the costs incurred by Plaintiff for Trial Graphix is too high because it is more than the amounts awarded in *DiBella* and *Farberware,* arguing that "[i]n neither case did the Court find it appropriate to award anywhere near the over $45,000 requested by SF and LSC." D.E. 209 at 5. AXA misleads the Court. In *Farberware,* the defendant sought $57,558.50 in technology-related costs, an amount which included $27,279.00 for "trial specialist" services. The Court did not allow the expense for the "trial specialists" - but only because the defendant failed to submit "invoices or descriptions of the work that its specialists performed." *Farberware*, 2009 WL 5173787, *8. Nowhere did the Court find the expense unreasonable or the amount inappropriate; quite the contrary, the Court recognized that "it may well be that the specialists performed important work" but that "[w]ithout an understanding of what work was done or how important it might have been to the trial," the expenses could not be awarded.[5] In *DiBella,* the plaintiff sought $56,100.00 for production of demonstratives and technology services at trial. The Court reduced it to $10,000, not because the amount was too high, as AXA suggests, but because he found that the amount invoiced for the technology consultant "undoubtedly include[d] compensation for time spent by [the consultant] as an attorney, time that is not compensable under 'costs.'" *DiBella,* 407 F. Supp. 2d at 540. Therefore, both cases involved amounts that exceeded what Plaintiff seeks here and in neither case did the Court

---

[5] In *Farberware,* the Court awarded $25,000 in expenses for audio-visual equipment rental and trial consultants, where the invoices for such rental and services totaled $30,279.50. That means that the Court granted 83% of the requested costs supported by invoices.

deny the amounts as too high or inappropriate; instead, the Court reduced the amounts due to specific deficiencies not at issue here.

To be sure, Plaintiff submitted the necessary invoices supporting its request for reimbursement, and those invoices provided descriptions of the work performed by the Trial Graphix specialists. The motion and this reply amply describe the importance of those services at trial. Moreover, none of the expenses invoiced by Trial Graphix include attorney's services. Thus, and because the services were necessary and reasonable, Plaintiff is entitled to reimbursement of the expenses consistent with *Farberware* and *DiBella*.

**WHEREFORE**, Plaintiff respectfully requests this Court to review and amend the taxed costs in this case to include a reimbursement for the Trial Graphix expenses incurred by Plaintiff, and for such other relief as the Court deems just and proper.

Respectfully submitted,

Dated: June 29, 2011

                                            GREENBERG TRAURIG, PA
                                            Attorneys for Plaintiff

                                            By: /s/ Brian H. Koch

| | |
|---|---|
| | JESÚS E. CUZA |
| | Admitted Pro Hac Vice |
| | INA M. BERLINGERI |
| PHILIP H. COHEN | Admitted Pro Hac Vice |
| GREENBERG TRAURIG, LLP | JOHN MCMANUS |
| 200 Park Avenue | Admitted Pro Hac Vice |
| New York, New York 10166 | BRIAN H. KOCH |
| Telephone: (212) 801-9200 | Admitted Pro Hac Vice |
| Facsimile: (212) 801-6400 | GREENBERG TRAURIG, P.A. |
| | 401 East Las Olas Blvd., Suite 2000 |
| | Fort Lauderdale, Florida 33301 |
| | Telephone: (954) 765-0500 |
| | Facsimile: (954) 765-1477 |